Good morning. Good morning, your honors. May it please the court. David Allure, appearing on behalf of Appellant Mandisha Hart. I'd like to reserve about four minutes for rebuttal. I'd just have, I'd like to just jump right in and start with the race to Dakota argument. And I think when we're looking at this, well, first of all, I'd like to point out that the primary right is that is being litigated in both these cases. The district judge attempted to come up with, came up with right to custody of Gary. Now, a primary right is the legally protected interest, which is harmed by the defendant's wrongful conduct. And we would suggest that the legally protected interest in this case is not the right to custody, or in the wrongful death, in this case, is not the right to custody, Gary, but the right to fair due process. The legally protected interest in the wrongful death case was not the right to custody to Gary either. It was the right of a child to be kept safe in foster care. So, I think the district judge, in the attempt to try to come up with a primary right that fit both cases, missed the mark in both of them. And the County of Los Angeles has yet to tell us what the primary right is in both cases. My understanding of this is that you're claiming that the state court action sounded in tort. On the other hand, this is a constitutional action that the state failed to adequately protect the child, but it's constitutional in nature. Is that right? I think that's fair. So, they're two different things. They're not barred by res judicata because they're that different. They're separated by different times, different acts, and different actors. Although there's one actor in common, Ms. Williams. So, we look at that and we just don't see how we can say that these involve the same primary right. It doesn't matter. Do we look to see? We know your argument is that they're two separate actions. They were not brought. But do we concern ourselves with whether they could have been both brought at the same time? I don't think that matters at all. Because we had the right to choose our forum. Both the state and federal courts have concurrent jurisdiction over civil rights. We could have brought this in state court. We wanted to bring it in federal court for lots of reasons. And we had every right to do that. I understand the district judge didn't like that. But that doesn't make it the same primary right and that doesn't mean we can't. I understand your position. Okay. I'd like to move on to the issue of materiality. There was a lot made in both the district judge's decision and the county's arguments about Ms. Hart at the juvenile court hearing not being straightforward. She was obviously distrustful of the court and the whole system. And she didn't want to tell them where her child was at first. Eventually, she did. And then the argument is put forth or stated by the district court and the argument is made by the county of Los Angeles that this was the reason why the child was detained by the judge. Of course, the obvious problem with that is it doesn't fit within one of the statutory grounds under Section 300 of the California Welfare and Institution Code. A judge can't detain a child for that kind of reason. The child has to be in danger. We detain children that are in danger. And the child is not in danger because his mother didn't want to tell the judge where he was at that particular moment. I think what the judge was talking about, though, and this is something we haven't mentioned in the briefs, is I think he's really talking about, when he said he took it into account, credibility. Because if we look at Section 319 of the Welfare and Institutions Code, which governs detention hearings, the judge is allowed to examine the parents and the child. In other words, get some evidence. It's still a prima facie standard. But the judge is allowed to examine the mother, and he did, and he's suggesting to her maybe she wasn't all that credible because of some of these other issues. But again, that would not be the basis of a detention. The detention has to be based upon some sort of child neglect that harmed the child or put the child at a substantial risk. You know, does it pose any problem that there were allegations made which, if true, would have caused a person of reasonable concern to conclude that there was a strong possibility that the child was at risk? Now, some of those statements were inaccurate, as I read the record. They were inaccurate, but it wasn't a deliberate lie. It was a reasonable belief when, in your view, I gather, as you argue, it shouldn't have been concluded. But we look at it. Do we say, if it's true, all right. If it's not true, the result will be as you want us to argue it? Well, I'm not sure which allegation you're referring to, but the only allegation that I think would have been grounds to detain the child was the allegation that she was using and abusing drugs and alcohol, and that as a result, the child is in danger. Yes. Okay? Those statements were completely false. Well, they were completely false at the time. And I'm wondering if, and that's what I'm asking. They were completely false at any time. You mean she doesn't have a history of... She has no history of drug or alcohol abuse. The county of Los Angeles itself, in the investigation in the prior case, concluded itself there was no evidence that she ever even used drugs or alcohol, much less abused them. The county of Los Angeles had in their possession three drug tests at the time of the detention, at the time that they filed these pleadings, and said that she wasn't using drugs or alcohol. I understand that. And I understand over what time those tests were made. And you may be accurate, and I'll have to recheck the record. I assume there was some past history. There was no past. That's really the point. They really had absolutely no reason to make this allegation, which is why we believe that the motive here was them wanting to close this file that had been open for months as quickly as they could. And one way to close a file is to detain the child. I gather that there's never been a problem with the first child. There were two children involved. The first child, there was, the history's in the briefs and in the record, but the first... But your argument would suggest that that's not so. And that's what I said. I'll go back and check. What happened there? But I thought that that was in the record. No, no, no. That child was originally detained because of the allegation of drug and alcohol use. That was determined to be false. And what happened to that child? Then at that point in time... The child was returned to the mother, and everybody lived happily ever after. No, there was not. There was a voluntary case plan that was entered into. Before that voluntary case plan even concluded, the county went back and said, not that she was using drugs or alcohol, but because she left the child with his grandmother, that he had abandoned the child. Or she had abandoned the child. What did the grandmother say? What? On this record, are there statements from the grandmother, the same grandmother? There's some statements in the various reports from the grandmother. And I gather your view is that nobody should believe that. Well, what the grandmother said was, I thought she might have got caught up in it when she was in high school. Not that she ever observed it. You see, I don't want to debate the facts with you, but I'm looking at the record, and I'm asking you, and when I ask you, you said, no, there's never any history. There is no history of drug or alcohol. There's a history of the mother saying that she suspected, or the grandmother saying that she suspected it, and an investigation of that in the prior case, and a conclusion that it was completely wrong. And then the social workers in this case, simply looking at that allegation and saying, not only is there a history of drug and alcohol abuse, but now she's still using it. And this child is in danger for it. And they were completely ignorant of that. They had no idea if those statements were true or not. And they made them, and that's a reckless disregard for the truth. I don't want to waste your time. Go ahead with your... No, that's not a waste of time. That's a good point. Go ahead. Okay. I think that you see in the district court's decision, the judge trying to find a way to further define this idea of a reckless disregard for the truth. One of the things he looked at, which I thought was interesting, is he looked at the California jury instructions, specifically Cassie 1603, which talks about a reckless disregard in intentional infliction of emotional distress case. And under that standard, in intentional infliction of emotional distress, they say reckless disregard includes situations where the defendant gave little or no thought to the probable effect of her conduct. Well, that would suggest that a reckless disregard for the truth would include situations where the defendant gave little or no thought to whether the matter stated was true or not. And I think that's what we have here. They gave absolute... I mean, they looked and saw that there was an allegation made in the past. They saw that that petition was dismissed and took no further action whatsoever to try to find out what that was about. They just simply said, oh, it was alleged before. We need to detain this child now. Let's just say it happened now or that it's continuing and that this child's in danger. You want to save the rest of your time? I do. I do. Thank you. Why don't we do that, and then we'll hear from the county, and then we'll hear from you again. Morning, Your Honors. Avi Berkowitz on behalf of the appellees, defendants, and the county and the social workers. I will start with the arrest you to cut argument, Your Honors, I guess, just because it's the order that was presented. Counsel argues that the county has not addressed the primary right. The primary right here was the damage associated with the detention and later the arrest. Plaintiff's counsel, appellee's counsel, appellant's counsel, argued in the trial court level. It's in the transcript and in the record, Your Honors, that the damages he's seeking is that when that child was detained and that child ultimately died is the emotional distress that the mother would have suffered from the death of that child. But the first state court opinion ruling, Your Honors, adjudicated the matter in favor of the county. Essentially, that the county was not liable and not responsible for the child's death. It would be inherently inconsistent to allow the matter to continue on to federal court when there's already been a ruling by a lower court that the county was not responsible for the child's death, therefore didn't cause child's death. So now, counsel would have the court believe that he can proceed in federal court. Let's play it out. The mother would have a claim that the kid was detained and she, as he will argue, will say, I have suffered emotional distress because my child was detained and my child died and I'm entitled to all that emotional distress. You have a state court opinion already stating that that is impossible to happen because of that ruling. You can't have it. So you have inconsistent opinions. It's a collateral estoppel issue. The state court opinion, in your view, did the state court describe the aspects that you're touching on now with sufficient specificity that it was clear that each of the issues argued in the federal action were dealt with by the state court? As your honor describes it, I can't say that specifically, your honor. But what I can say is that there was a cause of action for negligence. There was initially separate causes of action in the papers that were dismissed with prejudice where there were allegations that the county was wrongful, wrongfully took the child. And we have an opinion at the end that states the county is not responsible for the death. Okay. Well, let me just ask this. As I understand it, from looking at the record, it appears that the state court action basically sounded in tort. The county was negligent. The state court says, no, it wasn't. The federal claim is one based on a constitutional right. And admittedly, you ultimately look at the same facts. Given the fact that there are different parties to some degree involved, given the fact that one is constitutional and the other is a tort claim, how clear is it that race judicata applies here? I mean, we certainly don't want relitigation of the same issues. These seem a little bit different to me. Why is that wrong? I think it's wrong as the case that's cited by the district court that I'm hoping I'm pronouncing it correctly. I don't have my notes. I know it's Takahari or Takahishi. And that, Your Honors, is instructive because in that case, the first matter was in tort. It was, or actually it was in contract. It was a contractual dispute with a teacher who lost her position. Not constitutional. The second matter related to a federal right that is constitutional in nature. The district court in that case held the same thing that I'm arguing to Your Honors. It's the same primary right. It doesn't matter in what theory it is called, whether it is contract, whether it's tort, whether it's constitutional. It is the same primary right. No matter how you call it, what type of claim, what type of tort. You would say it's issue preclusion. Yes, I am. And I'm saying, and I apologize if I'm not clear enough on the issue preclusion, but I'm also saying it's a factual, it's a collateral estoppel type of where you would have inconsistent findings with respect to the damages allowable. So with that, Your Honors, if there's no other questions of that, I'll move on to the other topic with respect to the judicial deception. And that being, it is not as Mr. Allure is arguing to Your Honors. First of all, there are two parents involved in this case. There were two. There was a Mr. Brown, who was later found to have not been the actual parent. Social workers, of course, would have known that at the time. But there was Mr. Brown, and there was the mother, Ms. Hart. The court had jurisdiction. There was a petition filed as to both to be detained. Let's go back, though, before I get there, to the first case. That's pretty important. There is a first child who's already in the system. There's a petition that's sustained. There's a voluntary placement, in effect. And whether something is true or not is a red herring. And I'm not trying to be light or cavalier on that issue. Social workers are going to rely, just like district attorney, on certain allegations made. This is a grandmother. This is not somebody who's way out there. This is a grandmother. Not just a grandmother. Not the biological, wrong word, but the mother's mother. The mother's mother, an adoptive mother, but still a mother's mother, is telling social workers for the first dependency case involving the first child, mother is using drugs. In high school. By the way, this lady is, I think, 18 years old at the time. She's in high school. This is not high school 25 years ago, like me. This is someone who is using drugs in high school, and she's a high school graduate. So the social workers know that. It's in the record. That's what's being told to them. That's why petition is being sustained. I'm sorry, why petition is being initiated. Petition is later sustained on general neglect. At least a voluntary placement on those allegations. That was on the first one. That was on the first child. On general neglect. Is it because the mother left with the grandmother and then walked away, and then she's going to enter into a placement, and that's why it was adjudicated? Really? I mean, that's clearly not the issue. What was going on was a lot more than that. Mother did not even keep in touch with the first child. It's all in the record. There was no voluntary reunification because mother did not proceed. Does all of that have a lot to do with the issue in this case? It had an issue to do with the fact that when we get to the second case, the short answer is somewhat, because when we get to the second case. How about getting to the second case? Yes, so I'm going to get there right now. When we get to the second case, we see the social workers, and they're seeing the history. They're seeing that they can't find mom. They can't find her. They don't know where she is, so they have the second case. When they present the case to the court, by the way, an important thing here is, and I'm sure your honors have seen plenty of these types of cases, this is not a warrantless removal case. This is a case that goes to a dependency court, and the dependency court makes an order. What is presented in the dependency court's transcripts are on the record. He's looking at the prior case. He has the prior case available to this court and this judge. The judge has the detention report. He's reviewing the materials. He's making a decision, and it's not just based on one allegation. It's based on numerous allegations, and those allegations, according to the judge's mind, looks at it, and he's thinking, okay, there's enough to detain this child. It was only after that order was issued. Counsel is arguing there's some type of motive. The motive is we want to detain this child because we can't file the child for four months. Okay, well, you can just close out a file. You don't have to detain a child. I mean, that's clearly not the case. You don't have to detain a child and make up lies in order to just go ahead and detain a child. You can certainly close a file out for numerous reasons. But here's the bottom line. The bottom line goes to this. Whether something is true or not is not what brings a constitutional violation. That's not the issue. We're not here at the lower, lower court for dependency to decide if something's true or not. We're here to decide the two elements for that claim. Was it intentional or reckless disregard? We can only look at the social workers involved, not the county of some amorphous blob. We need to look at the three social workers. One social worker whose job is she sits in an office, Your Honors. She's taking paperwork and processing it. That's her job. And she's intentionally deceiving someone and filing things. You know, we're going to have to decide this case on the record. And I understand, well, I don't understand, but it appears that you have some deep emotional involvement. That's not going to turn this case. We're going to decide it on what's in the record. And what's in this record is what your opponent wanted us to point out. He says in this record there is no basis for the action taken. Now you're saying there is. So point us to where is it and where we'll find it. First of all, it is in the record. I'll try to. Report it to us then. Yes. Ms. Marin's declaration is in the record. I mean, the actual, I'll have to find it, but her declaration is in the record with respect to what she was involved in. The record specifically does state the allegations, the detention report lays out, SSER 78, lays out the issues with respect to the detention report and what the office, what the dependency court had. SSER 82-96, SER 4546, 61 through 63. All of these things show, all of the matters that the dependency court had as a basis to detain. Well, what do they say that gives the basis for the detention? They say that the mother was living in an empty storefront. These are things that they knew at the time, again, whether they're true or not is irrelevant. Empty storefront. That the mother did not care for her medical condition at the time, chlamydia. The fact that she was in an abusive relationship. The fact that she had a prior child. I'll go slower and lay off the monster drink, so I'm sorry with the emotion here. You had a monster drink before you got out. No, I didn't. No, I didn't, but I was waiting for that. Oh, my. Just a regular cup of coffee. Did you read the warning? No. It was just my machine, Your Honor. There's no warnings on the machine. But you also have what you have, what you also have is a prior history, as I was alluding to before, and the basis of what they are looking for. Prior history without going to a great deal of length. What does it actually say about whether she ever was a drug abuser? It says that the grandmother alleged it, but it wasn't sustained on that petition. That's true. Yeah. It does say that, but that wasn't the only basis for detention in the second case, and the court actually states that. So it states all these other things as well with respect to that she was possibly prostituting, all these different things that are allegations that led the court to make that decision. It wasn't just based on drugs. Is it your position, the county's position, that there were a variety of bases for detaining the child, some of which are not challenged by Ms. Hart, some of which are, but all you need is one or two of these other ones, and that was sufficient, and that's the end of the story? Yeah, I'm saying that because one of the things, Your Honor, is that it has to be material. You may be saying it, but you sure said it in a lot more words than the judge just put it. I said it there. It's a monster drink. I knew it. It took me 13 minutes to get to that point, but, yes, it was enough. Just a couple of those things. So I think I could stop two minutes early on if there's anything else. Thank you. It's fine. It won't hurt our feelings. Thank you. Thank you very much. Any counsel rebuttal? Thank you, Your Honor. You know, there's one thing in your briefing. This won't get to your rebuttal, and I'm going to kill your time on it. You said this child died because she was placed in a crib with adult-sized sheets and adult-sized this and adult-sized blanket. Where in the record do we find that fact? It would be in the motion that we brought where we had also a motion for summary adjudication of causation, which included all the evidence of how the baby died. Yeah, he suffocated to death. The motion would be where? It would be in our ‑‑ there were two motions filed in this matter. We filed a motion for summary adjudication both on the qualified immunity but also on ‑‑ It would be in your affidavit. What's that? It would be in your affidavit. There's an affidavit from an expert witness in there. Because I looked at the death certificate, and the death certificate didn't show it. There's a whole story behind that. All right. All right. Okay. Go ahead now with what you want to say. Thank you. Did you have a monster drink? I'm like this all the time. Yeah, okay. I don't need a monster drink. Okay. I've done two jury trials already this year, and I'm already up. Is that all? Just two? A variety of things. I want to stop at the last point made on the appeals argument. This variety of other things. You can't just come up with a few things and say she's doing this, she's doing that. Maybe she's doing this. It would have to be something there that constituted neglect under the statute that put the child in danger. Let me ask you this. Where was the danger to this child? Let's assume whether they did this or not. Let's assume all of the 319 G factors were considered. And there were, say, ten things. Five of them were false, but five of them were true. Is there enough in those five in the hypothetical to detain the child and there would be no cause of action even though the other five were false? If there were allegations or if there was evidence in the detention report, and it also needs to be in the petition. Right. I understand that. But if there was evidence of neglect, a fact-showing neglect that put the child in danger under Section 300, then yes. That would be enough. But they don't have that here. If we look at all of those other factors, none of them rise to the level of neglect under Section 300. And there is absolutely no reason at all for anyone to believe that this child was in danger, except for the fact that they told the juvenile court that he was in danger because his mother not only was using drugs now, but had a history of it, and they suggested that that was why the other child was taken. Even though the other child was taken by a hearing that she never got notice of, a petition she never received notice of, hearings went forward without her ever knowing about it. Yeah, but you know why. Because she's living with her boyfriend and they didn't serve her. They didn't know how to find her on this record. Well, they didn't find her. I don't know if they didn't know how to find her. They didn't find her. But what is interesting is that they did find her on September 23rd. They go out on September 24th at the one time with a police officer. They don't know anything. They're going out there with the police officer. She's not home. What do they do? They file a petition. I think that tells us a lot. I'll submit. Thank you. Okay. Thank you. Okay. I know we've only got one more case. We're going to take a quick three-minute recess and the court will be right back. Thank you.
judges: Sentelle, Farris, M. Smith